[Civ. No. 52419. Second Dist., Div. Four. May 14, 1979.]

SUPERIOR LUMBER CO., Plaintiff and Respondent, v.
ROBERT SUTRO, as Trustee, etc., et al., Defendants and Appellants.

## Counsel

Lawrence B. Parker, Michael B. Kolley, Farhad Kazemzadeh, Andrew S. Leerskov and Richard M. Blumenthal for Defendants and Appellants.

Irving Reifman and Mason C. Brown for Plaintiff and Respondent.

## Opinion

**FILES, P. J.**—This appeal arises out of consolidated actions foreclosing mechanics liens on two condominium projects.

Appellant is a lender who took the property on foreclosure of a trust deed.

We have concluded that the trial court's finding that the lien claimant and the owner were "one entity and indivisible" precludes enforcement of the claim, and therefore reverse the judgment.

The appeal has come up on a clerk's transcript only, so we must assume that substantial evidence supports the trial court's findings of fact.

Urbanetics Financial Corporation (hereinafter Urbanetics) constructed two residential condominium buildings. Robert Sutro and Edwin S. Bingham, Jr., as trustees of Sutro Mortgage Investment Trust (hereinafter Sutro) loaned money to Urbanetics, receiving trust deeds on the condominium projects as security. The trust deeds were recorded after the commencement of the work of improvement.

Plaintiff Superior Lumber Company (hereinafter Superior) supplied lumber and other wood products which went into the construction.

Urbanetics defaulted in the payment of interest to Sutro and filed a proceeding in the United States District Court for arrangement of debts under chapter XI of the Bankruptcy Act. With the consent of the bankruptcy court, Sutro proceeded to foreclose its trust deeds by a trustee's sale, through which Sutro acquired the two properties. After Sutro had sold all of the condominium units, its actual loss, excluding interest which accrued after the trustee's sale, was $447,000.

Meanwhile, Superior had recorded a claim of lien for the unpaid balance allegedly due it of the price of the materials it had furnished. These actions to foreclose the liens followed.

The findings describe the relationship between Superior (plaintiff) and Urbanetics as follows:

"1. Plaintiff is a *de facto* corporation due to the fact that Articles of Incorporation were timely filed with the Office of the Secretary of State for California on January 20, 1972, but that no capital stock was ever issued by Plaintiff, nor were the By-Laws of said Plaintiff fully executed."

"32. Plaintiff was a wholly owned subsidiary of URBANETICS FINANCIAL CORPORATION."

"33. URBANETICS FINANCIAL CORPORATION dominated and controlled Plaintiff so that URBANETICS FINANCIAL CORPORATION and Plaintiff were one entity and indivisible."

The trial court's conclusions of law include this statement:

"Plaintiff was controlled by and was a mere instrumentality and conduit of URBANETICS FINANCIAL CORPORATION."

The reasoning of the trial court, as revealed in its memorandum of intended decision and in its conclusions of law, was that the case turned on whether or not "the concept of alter ego" applied. The trial court explained that this concept consisted of two elements. One element, the unity of ownership and control, had been proven, but the second element, which is fraud or injustice, had not. Accordingly, the court ordered enforcement of plaintiff's lien.

The Latin "alter ego" is useful as a shorthand characterization of a legal result. The "concept" is applied when a court decides that an obligation incurred in the name of an impecunious corporation should be borne by some other person or entity. In the case before us, the facts found by the trial court can be discussed more clearly in plain English, and it will not be necessary to use the Latin phrase to explain the reasons for reversing the judgment.

Finding 32 that "Plaintiff was a wholly owned subsidiary" of Urbanetics is somewhat obscure, since we ordinarily say that a corporation is "owned" by its shareholders, of which plaintiff had none, according to finding number 1.

Finding 33 that Urbanetics and plaintiff "were one entity and indivisible" is more informative. This indicates that although Urbanetics filed articles of incorporation for "Superior Lumber Co.," Urbanetics simply used Superior Lumber Co. as a name under which it did business.

Finding 33 apparently means that Superior had no capital or management of its own. This interpretation is reinforced by the statement in finding 1 that no stock was issued or bylaws adopted. The finding that Urbanetics and Superior were "one entity and indivisible" indicates that whatever is recovered by "Superior Lumber Co." through mechanics lien foreclosure will belong to Urbanetics.

The trial court's conclusion of law that Superior was a "conduit" implies that something merely passed through without any significant activity en route. In the context of the other findings, this seems to refer to a bookkeeping practice. That is, when Urbanetics purchased lumber, it recorded a purchase by Superior and a resale to Urbanetics, although in fact there was only one transaction.

California Constitution, article XIV, section 3 (formerly art. XX, § 15) provides that "Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a lien upon the property which they have bestowed labor or furnished material. . . ."

Civil Code division third, part 4, title 15, commencing with section 3082, implements that constitutional grant. Sections 3110 and 3112 list the persons entitled to a lien. Nothing in either the Constitution or the Civil Code indicates any intent that the owner shall have a lien for the materials which he furnishes.

One of the benefits of the mechanics lien is that it has statutory priority over any deed of trust or other encumbrance which attaches subsequent to the commencement of the work of improvement. (Civ. Code, § 3134.) This is the priority which plaintiff seeks to enforce in these actions. Under the decision of the trial court, Urbanetics is found to have acquired a lien on its own property which takes priority over a trust deed which was recorded after the work of improvement had commenced.

In reaching the decision which must follow from the trial court's findings, it is not necessary to discuss "fraud" or "injustice" in the abstract. The simple answer is that the mechanics lien law does not authorize an owner who has lost its property through a trustee's sale, to assert a priority claim against that property for the value of materials which it furnished.

The judgment is reversed.

Kingsley, J., and Jefferson (Bernard), J., concurred.

A petition for a rehearing was denied May 31, 1979.